## No. 11,673.

### STANDARD COTTON SEED OIL COMPANY VS. EXCELSIOR REFINING COMPANY.

Where a contract made in the latter part of January calls for the sale of oil " *thereafter to be made by the seller, and to be delivered as made*," the parties to the contract must have had in contemplation a quality of oil which was susceptible of being made at that late period of the season.

In ascertaining the quality of the object contracted for, this specification as to time of making and delivery controls the mere name of the article in the contract.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

---

*Gus A. Breaux* and *Percy Roberts*, for Plaintiffs, Appellants, cite C. C., Arts. 1948, 1951, 1955, 1956, 1945; 30 An. 264.

---

*Gilmore & Baldwin* for Defendants, Appellees.

---

Argued and submitted March 29, 1895.
Opinion handed down April 22, 1895.

On the 10th of January, 1894, the plaintiff sold to the defendant five hundred barrels of prime crude cotton-seed oil at the price of twenty-eight cents per gallon. The terms of sale according to the contracts were "f. o. b. buyers tank cars at the mill, delivery as made last half January and first half February, buyers to furnish tank cars promptly as ordered."

On the 13th of January, plaintiff sold five tank cars of their prime cotton-seed oil (tanks estimated to hold six thousand two hundred gallons) at the price of thirty cents per gallon of seven and one-half barrels. The terms of sale were f. o. b. at plaintiff's mill, delivery during February and the first ten days in March as made.

Shortly after the contract plaintiff tendered to the defendant one hundred and twenty-four barrels of oil, which were received and paid for. A little later they tendered for delivery the balance of the five hundred barrels covered by the first contract, but the defendant, on the ground of inability to pay the price of the oil, requested plaintiff to sell the balance of the five hundred barrels to other persons and allow it to take a like number of barrels of oil thereafter. In conformity with the request plaintiff sold the balance of the oil of the first contract to the Union Oil Company, which was accepted and paid for as being up to the grade of oil stipulated.

Plaintiff tendered to defendant oil made by it, under the second contract, but defendant declined to receive it at first, because it was not prepared to pay the price, and subsequently upon the ground that the oil tendered was not up to the grade of oil stipulated. The parties with a view to an adjustment consented to an arbitration as to whether the oil tendered was prime or not. A. C. Landry was appointed arbitrator on behalf of the plaintiff and Jules Aldigé on behalf of the defendant. The arbitrators differed in opinion. Aldigé's report was that the oil was " *crude*—made of slightly mixed seed— seed over-cooked. Oil not settled—not prime." Landry's report was: " I have critically examined the said oil. I do not hesitate to say that, in my opinion, it is fully prime and should be accepted as such."

In view of the disagreement between the arbitrators W. A. Lawler was appointed as an umpire in the matter. His report was: " I call the oil prime crude cotton-seed oil of the season. The oil is not properly settled—containing light settlings."

Upon the receipt by the two arbitrators of this opinion of Lawler's

they joined in a report as follows: "The umpire's opinion, as above expressed, is in favor of the Standard Cotton Seed Oil Company and therefore makes the oil offered by the said mill a good tender."

The defendant company refused to accept or approve this report, calling in question the right of the arbitrators to express any opinion as to the conclusions of the umpire, insisting that his report was really in its favor.

In the meantime plaintiff, after notice to the defendant, sold the oil at a loss for account of defendant.

Plaintiff's demand is for the price under the contracts subject to the credits resulting from the subsequent sales for account of defendant.

Judgment was rendered in favor of defendant, and plaintiff appealed.

---

The opinion of the court was delivered by

NICHOLLS, C. J.  A great many witnesses were placed upon the stand, and a great deal of testimony was taken as to whether there was any difference between " prime crude cotton-seed oil " and " prime crude cotton-seed oil of the season," as to what that difference was, and whether the former quality of oil was better or worse than the latter.  Among the witnesses examined were the two arbitrators and Lawler, the umpire.

Plaintiff attempted to elicit from Lawler as a witness his opinion as to whether the oil tendered was a good tender under the contracts, but defendant successfully objected to his answering questions directed to that end on the ground that that was matter for the court, and not the witness, to pass upon, but none the less we think his opinion pretty clearly appears from the evidence actually received.

He said, among other things: "The difference. (between the two classifications of oils) is this: prime crude cotton-seed oil is made from seed in the early part of the season while the seed is nice and fresh.  You can store away a thousand barrels of such oil in tanks and put it on the market in March, and you can take oil that is made from good sound seed and you will find that there is a difference in the oils, both in color, taste, odor and refining properties in favor of the oil of the early months of the year—the first oil made.

The following questions and answers followed:

Q. A contract is made for oil on the 10th of January for oil delivered the last of January and the early part of February, the oil to be made under that contract and to be delivered on that contract, I ask you if an oil of that kind with good color, with proper smell, proper taste and with light settlings would be accepted under a contract for prime crude oil?

A. Well, I consider oil prime whether it has got settlings in it or not.

Q. It is prime?

A. Yes, sir.

Q. In other words there is settlings in all oils?

A. An oil may be prime and good, but it may not be well settled.

Q. What I want to get is this: Here is a contract made on January 10 for prime crude oil delivered in the latter part of January and in the early part of February; now I want to know from you whether or not such oil, oil as you examined, whether or not that oil should have been receivable under that contract?"

(Defendant's counsel objected as above stated.)

Q. This is your decision, Mr. Lawler, which I now hand you?

A. Yes, sir.

Q. Now I want to know precisely what you mean—I can not determine from that whether you determined that oil could be delivered under the contract or not?

(Defendant's counsel objected to any statement of the witness that the oil is receivable under the contract, because the contract speaks for itself, and on the ground that if there is anything ambiguous in the contract it should be considered against the vendor.)

*By the Witness:* What I mean by "crude cotton-seed oil of the season," when I mentioned those two samples taken from those two cars, I mean that it was oil that was perfect in every respect, and as good oil as could be made out of sound seed, at that time, properly handled.

*By the Court:* Do you mean that it was as good as prime crude cotton-seed oil?

A. It was not as good as oil that could be made out of seed during the months of October, November and December.

Q. Was it such oil as the people interested in the contract would call for?

A. I have never seen the contract.

Q. Well, the contract calls for prime cotton-seed oil on the 10th day of January, deliverable in the latter part of January and the first part of February. Here is the contract—I will read it to you. (Counsel reads the contract.)

A. This oil, if I remember aright, had a good deal of light settlings in it.

Q. That is your opinion?

A. No, sir; not my opinion merely. I should have considered it good delivery, but as the oil was not well settled—the contract not saying anything about well-settled oil—it is between the buyer and vendor to settle this matter.

Q. In other words, you did not decide whether it was a good delivery or not?

A. No, sir; I am not able to on account of the settlings.

Lapeyre, the refiner of the defendant, upon the stand as a witness, being asked the question whether there was a difference in the trade between "prime crude cotton-seed oil" and "prime crude cotton-seed oil of the season" answered, "Well, there is only one quality of prime crude cotton-seed oil as I said properly manipulated and you can only get it at one season of the year, but those articles generally sell on their merits."

From the testimony which we have copied and from that of others, it appears to us that "prime crude cotton-seed oil," in the *strict sense of the word, could not be manufactured as late as the middle of January or the beginning of February,* and that any oil (no matter how well made nor from what kind of seed) made as late as that would fall under the term "prime crude cotton-seed oil of the season," but an examination of the contracts will show that in the contemplation of the parties thereto that the oil contracted for should be *thereafter manufactured* by the selling company at their mill and be *delivered as made; if so* the article with respect to which they were contracting *was necessarily the kind of article which could be manufactured* at that late time by the seller. The terms employed can not be held to have been used with reference to an oil already in existence. We think this view of matters determinative of the rights of the parties in so far as the designation of the article contracted for is concerned.

Lawler says of the oil tendered: "It is oil that was perfect in every respect, and as good oil as could be made out of sound seed at that time properly handled."

50

We think the case is with the plaintiff. We do not think the settlings spoken of by the witnesses affected to any extent the quality of the oil. It was shown that all oils have them more or less, and we do not think it had more settlings than might have been reasonably anticipated by the parties.

We are of the opinion that the judgment is erroneous, for the reasons herein assigned.

It is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and it is now ordered, adjudged and decreed that the plaintiffs, the Standard Cotton Seed Oil Company, do have and recover judgment against the defendant, the Excelsior Refining Company, for the full sum of four thousand and forty-two dollars and fourteen cents, with legal interest from judicial demand and costs in both courts.